**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1242
_____

LINDELL TATE,
                            Appellant

v.

S. WIGGINS, Hearing Examiner; CARR, Corrections Officer;
CHRISTIE ACHENCK, Grievance Coordinator; MARK BURKE, P.S.A.;
JENNIFER MCCLELLAND, Unit Manager; BRIAN HYDE, Health Administrator;
MELISSA HAINSWORTH, Superintendent; ERIC TICE, Superintendent
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3:18-cv-00230)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 21, 2020
Before:  SHWARTZ, RESTREPO and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 24, 2020)
_____

OPINION*
_____

PER CURIAM

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Lindell Tate, a Pennsylvania inmate, appeals pro se from an order of the United States District Court for the Western District of Pennsylvania sua sponte dismissing his 42 U.S.C. § 1983 complaint for failure to state a claim. For the following reasons, we will affirm in part, vacate in part, and remand to the District Court for further proceedings.

I.

Tate, a Pennsylvania prisoner confined at SCI-Somerset, filed a complaint alleging that he was in the restricted housing unit (RHU) on June 20, 2018, when Disciplinary Hearing Officer Wiggins "became hypersexual[,] … exclaiming strong sexual obscenities, grinding his backside on inmates' cell door[s], while confessing that his prejudice as a decision maker during misconduct hearings was only in fact because the inmates don't 'lick enough ass.'" Tate claimed that this incident resulted in "sexual trauma[,]" such that "[e]very time he seeks sexual pleasure ([t]hrough self pleasure) defendant Wiggins' charade is recalled to his mind, then nothing works." Tate also claimed that prison staff ignored his requests for mental health treatment. He further complained that, while in the RHU for 90 days, he was placed in a seven by ten foot cell, showered only three times per week, received "an hour of yard" (without specifying a frequency), and had to wait 14 hours between dinner and breakfast. Finally, Tate asserted that the disciplinary hearing which led to his confinement in the RHU was "contrary to impartiality." He sought compensatory, punitive, and general damages, as well as expungement of the misconduct charges which led to his placement in the RHU.

2

A Magistrate Judge recommended sua sponte dismissing the complaint for failure to state a claim under 28 U.S.C. § 1915A, stating that the "defects in the complaint are numerous." In particular, the Magistrate Judge concluded that Tate did not allege a bodily injury or serious medical need. According to the Magistrate Judge, even if Tate's condition did constitute a serious medical need, "that holding would be so novel that the doctrine of qualified immunity would protect the medical department defendants from liability for damages." In addition, the Magistrate Judge concluded that Tate could not use a civil lawsuit as a substitute for an appeal from a disciplinary sanction until the sanction has been overturned. Finally, the Magistrate Judge denied leave to amend, stating that "[h]aving litigation become a correspondence course with 'pro se litigants with fanciful notions of their rights and deprivations,' Powell v. Symons, 680 F.3d 301, 307 (3d Cir. 2012), is a waste of scarce judicial resources." Tate filed objections. By order entered December 17, 2018, the District Court adopted the Report and Recommendation and dismissed the complaint for failure to state a claim without leave to amend. Tate appealed.[1]

II.

We have jurisdiction under 28 U.S.C. § 1291, and our review of a § 1915A(b)(1) dismissal for failure to state a claim is guided by the same de novo standard used to

---

[1] Although Tate's notice of appeal was filed more than 30 days after the District Court entered judgment on December 17, 2018, see Fed. R. App. P. 4(a)(1)(A), the District Court subsequently granted his motion to extend the time to appeal under Federal Rule of Appellate Procedure 4(a)(5) and deemed his appeal timely filed. See Ramseur v. Beyer, 921 F.2d 504, 507 (3d Cir. 1990).

evaluate successful motions to dismiss under Fed. R. Civ. P. 12(b)(6). See Harnage v. Lightner, 916 F.3d 138, 140-41 (2d Cir. 2019) (per curiam); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000) ("Our review of the District Court's sua sponte dismissal for failure to state a claim, which was authorized by 28 U.S.C. § 1915(e)(2)(B)(ii) . . ., like that for dismissal under Fed. R. Civ. P. 12(b)(6), is plenary.").

## III.

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Establishing a claim requires proving both an objective component — "a serious medical need"—and a subjective component — "acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

The District Court erred in dismissing Tate's claim that the defendants ignored his requests for mental health treatment. According to the complaint, prison medical staff diagnosed Tate with a psychosomatic condition on July 17, 2018, and referred him to the psychology department. Tate attempted to get help from that department, submitting two requests to speak to someone "about his embarrassing physical ailment, psychological unstableness, and the haunting memory of the perverted actions and words of defendant Wiggins." Tate received no response to those requests. With his "emotional distress

4

mounting," Tate continued to press for help, submitting "several other requests" for treatment. In one of those requests, Tate "expressed … that the loss of his father, loss of his freedom, feeling like he is being forced into oral sex, and now feeling as if [he was] being treated as a pariah because of his reporting [of prison officials] all seemed to be overwhelming at times throughout the day and he was going through a struggle with not killing himself." The psychology department eventually did respond, telling Tate, "we encourage you to follow the grievance system if you feel that it is necessary." Tate apparently attempted to use that system, but asserted that "[h]e has been totally denied his speaking with anyone in the psychology department (even after he grieved)."[2] Notably, Tate claimed that the prison health administrator "had knowledge of [his] physical and mental ailment[s] through 'inmate sick call' and an inmate grievance." According to Tate, the denial of psychological care in the RHU had a "profound" effect on his "recovery from the ailment of his mental faculty, forcing him to fight through PTSD, anxiety disorders, and depression."[3]

---

[2] Tate did concede, however, that after being released from the RHU, he was able to "knock on the door of his unit psychologist and speak with her." On October 19, 2018, he was diagnosed with post-traumatic stress disorder, anxiety disorders, and depression.

[3] A prisoner may not bring a federal civil action for damages for mental or emotional injury suffered while in custody absent a showing of physical injury. See 42 U.S.C. § 1997e(e). Thus, because Tate did not allege a physical injury resulting from the defendants' alleged failure to respond to his requests for psychological treatment, he was not entitled to compensatory damages. But the District Court should have provided Tate with leave to amend to allege a physical injury. Mitchell v. Horn, 318 F.3d 523, 534 (3d Cir. 2003). And § 1997e(e) does not bar Tate's claims to the extent that he sought nominal and punitive damages, or declaratory relief. See id. at 533; Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000) ("Although Allah does not expressly seek nominal damages in his complaint, this court has held that 'it is not necessary to allege nominal

Given these allegations, which must be accepted as true, Tate has stated a claim for deliberate indifference to serious medical needs. Prison medical staff determined that his initial complaints warranted a referral to the psychology department. See Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir.2003) (recognizing a serious medical need includes one that "has been diagnosed by a physician as requiring treatment"). Tate repeatedly sought treatment from that department, identifying the issues that were causing him anguish and specifically indicating that he was struggling with not killing himself. See Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 320 (3d Cir. 2005) (stating that "[a] particular vulnerability to suicide represents a serious medical need"); cf. Palakovic v. Wetzel, 854 F.3d 209, 230 (3d Cir. 2017) ("Our statements in [prior cases] requiring a plaintiff to demonstrate a 'strong likelihood' of self-harm were never intended to demand a heightened showing at the pleading stage by demonstrating … that the plaintiff's suicide was temporally imminent or somehow clinically inevitable."). But the psychology department ignored Tate's requests while he was in the RHU. Thus, it appears that Tate was denied psychological care that prison medical staff themselves believed was necessary. See Johnson v. Wright, 412 F.3d 398, 404 (2d Cir. 2005) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians."). Therefore, we will vacate the dismissal of this claim and remand to the District Court for further proceedings.

---

damages.'" (quoting Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965)).

We conclude, however, that the District Court properly dismissed Tate's remaining claims. As noted, Tate alleged that the defendants failed to treat him for erectile dysfunction. Even assuming that Tate's condition constitutes a serious medical need, we agree that the defendants are entitled to qualified immunity because there is no clearly established right involved here. See Michtavi v. Scism, 808 F.3d 203, 207 (3d Cir. 2015) (holding that prison officials were entitled to qualified immunity because "[t]here is no Supreme Court or appellate precedent holding that prison officials must treat retrograde ejaculation, infertility, or erectile dysfunction; in fact, the weight of authority is to the contrary"); see also Story v. Foote, 782 F.3d 968, 969-70 (8th Cir. 2015) (stating that "we may consider the defense of qualified immunity in reviewing the district court's preservice dismissal"). In addition, Officer Wiggins' actions and statements did not violate the Constitution. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (explaining that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). And the conditions that Tate experienced in the RHU for 90 days did not amount to an atypical and significant hardship. Sandin v. Conner, 515 U.S. 472, 484 (1995); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (holding that seven months in disciplinary segregation is insufficient to trigger a due process violation). Furthermore, although Tate claimed that his disciplinary hearing was "contrary to impartiality," that claim lacks merit

7

in the absence of a protected liberty interest. <u>See</u> <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708-09 (3d Cir. 1997) (holding that, based on <u>Sandin</u>, failure to give a prisoner a hearing prior to his transfer to administrative custody was not a violation of due process because the custody did not impose an "atypical and significant hardship"). Finally, amendment of these claims would be futile. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

## IV.

For the reasons given, we vacate the District Court dismissal of Tate's mental health treatment claim and will remand for further proceedings. In all other respects, we will affirm the District Court's judgment.[4]

---

[4] Tate's motion for default judgment is denied.