**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2820

_____

LINDELL TATE,

Appellant

v.

LINDSAY, Lieutenant;
FAULTZ, C.O.I. at SCI Somerset

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3:20-cv-00086)
District Judge: Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on July 9, 2021

Before: GREENAWAY, JR., KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: November 23, 2021)

———————

OPINION[*]

———————

PER CURIAM

Pro se appellant Lindell Tate appeals from the order dismissing his complaint for failure to state a claim. For the reasons that follow, we will vacate the judgment of the District Court and remand for further proceedings.

In his complaint, Tate, a prisoner formerly incarcerated at State Correctional Institution Somerset, brought one claim against two prison official defendants for failure to protect, based on the following allegations, which we accept as true at this stage of the proceedings. One morning while defendant Faultz, a correctional officer, was bringing breakfast trays to Tate's cell, Tate informed him that Tate and his cellmate were not getting along and were having heated exchanges. Tate asked to be moved to another cell, and he proposed as options two cells that had open beds. Faultz said that he would work on it. After Tate spoke to Faultz about the issue "at length several times" that morning, Faultz got frustrated and said that the decision was up to the lieutenant working that day.

Around 11:00 a.m., Tate contacted defendant Lieutenant Lindsay directly via the intercom in his cell and told him that he and his cellmate had nearly come to blows a few times and could no longer tolerate one another. Tate's cellmate yelled into the intercom that if one of them was not moved, something was going to happen to one of them. Tate then

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

repeated the same threat. In response, defendant Lindsay told Tate and his cellmate that if they both were not willing to move cells neither could move. Tate's cellmate refused to move, and no action was taken. Defendant Faultz was standing outside Tate's cell during the call.

Mid-afternoon, Tate was standing at the door of his cell watching television when his cellmate attacked him from behind, choked him until he lost consciousness, and tied his hands and feet behind his back. Tate suffered a "busted lip" in the process. An officer eventually discovered Tate during rounds, and he was given medical treatment. Tate was thereafter moved to another cell, and his cellmate was sentenced to 90 days in the restricted housing unit.

The District Court dismissed Tate's complaint under 28 U.S.C §§ 1915(e)(2) and 1915A for failure to state a claim, adopting a Magistrate Judge's Report and Recommendation as its opinion, over Tate's objections. This timely appeal followed.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's order dismissing the complaint under §§ 1915(e)(2) and 1915A. See Harnage v. Lightner, 916 F.3d 138, 140 (2d Cir. 2019) (per curium); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). In reviewing a dismissal for failure to state a claim, "we accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A prison official is liable under the Eighth Amendment for failure to protect an inmate if the official subjectively knew of and chose to disregard a substantial risk of serious harm

3

to an inmate's health or safety, i.e., if the official was deliberately indifferent to the risk. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) ("To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.") (citations omitted), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). The allegations in Tate's complaint entail that defendants Faultz and Lindsay subjectively knew of his dispute with his cellmate. The relevant questions therefore are whether they disregarded a substantial risk of serious harm to Tate and whether their deliberate indifference caused his injuries.

We have noted that "prison officials are presented with an arduous task when asked to discern legitimate from illegitimate requests for protective custody." Young v. Quinlan, 960 F.2d 351, 363 n.23 (3d Cir. 1992), superseded by statute on other grounds as stated in Nyhuis v. Reno, 204 F.3d 65, 71 n.7 (3d Cir. 2000). In a "realistic world, prisoners may feign their fear of physical harm simply to manipulate a transfer," for reasons such as a desire to "dorm with a friend" or "obtain better living quarters." Id. (citation omitted). "Prison officials . . . are not required to provide protective custody to every inmate who asserts he was assaulted or threatened," but they are required to investigate and determine the credibility of the inmate's fear. Id.

After learning of the heated conflict between Tate and his cellmate, the defendants ostensibly determined there was at least some credibility to Tate's fear because they offered

4

to take remedial action in the form of moving both prisoners to different cells. However, when Tate's cellmate refused to move to another cell—a decision wholly out of Tate's control—the defendants withdrew the offer of remedial action as to Tate, thus forcing him to remain trapped in an ongoing, and apparently escalating, volatile situation, which ultimately proved dangerous. We conclude that these allegations sufficiently pled that the defendants disregarded a substantial risk of serious harm to Tate and that their deliberate indifference caused his injuries.

The District Court concluded that Tate's injuries were not more than de minimis and thus could not be used to establish that the defendants were deliberately indifferent to an excessive risk to his health or safety. However, in so concluding, the Court reduced Tate's injuries to merely a "busted lip," proclaiming, "That's it." (ECF No. 5 at 10). As noted, Tate alleged that his cellmate choked him until he lost consciousness, and then tied his hands and feet behind his back, which is how he remained until a guard found him. His lip was injured during the attack. Clearly, these were more than de minimis injuries.

For the foregoing reasons, we conclude that Tate's allegations were sufficient to state a failure-to-protect claim against the defendants, and we therefore will vacate the judgment of the District Court and remand for further proceedings.